The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Amy L. Pfeiffer and the briefs. The parties waived oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission affirms and adopts the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. An employment relationship existed at the time of the alleged incident giving rise to this claim between plaintiff and defendant-employer, Fluor Daniel Construction.
4. Aetna Casualty Surety Company was the carrier on the risk for workers' compensation purposes at the time of the alleged incident giving rise to this claim.
5. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged incident giving rise to this claim, with defendant-employer employing the requisite number of employees to be bound under the provision of the Act.
6. Plaintiff's average weekly wage is to be determined pursuant to a Form 22 wage chart submitted at the hearing on 16 March 1999.
7. In addition to the deposition transcript and attached exhibits, the parties stipulated into evidence joint exhibit one, A through L; and joint exhibits two through eight. Also admitted into evidence in this matter was plaintiff's exhibit one, the Form 18; and defendants' exhibits one and two, plaintiff's responses to interrogatories and plaintiff's recorded statement, respectively.
8. The issues to be determined as a result of this hearing are whether plaintiff sustained a compensable injury by accident or contracted a compensable occupational disease, and if so, to what benefits is he entitled.
 ***********
The 9 April 1999 Order by Deputy Commissioner Pfeiffer dismissing defendants The Stellar Associates; Edwards, Inc.; B.E.K Construction; and Crowder Construction from this action is incorporated by reference.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing on 16 March 1999, plaintiff was a fifty-seven year old male who was certified as a welder in 1974. Thereafter, plaintiff worked on construction jobs for numerous employers, primarily as a welder and pipe fitter.
2. Plaintiff was hired by defendant-employer as a welder in September 1993. On 29 October 1993, plaintiff was working when a pipe behind him burst and sprayed him with a hydrochloric acid solution. Plaintiff was immediately placed under an emergency shower and was treated by paramedics on the job site. The paramedics examined plaintiff and found "clear, non-labored breath sounds" and normal respiratory expansion. Plaintiff was then taken to the emergency room and was examined by Dr. Alfred Woodworth. At the time, plaintiff's lungs were clear and plaintiff was in no acute distress. In addition, chest x-rays confirmed that plaintiff's lungs were clear. Plaintiff was discharged from the emergency room and instructed to submit to a follow-up visit in two days.
3. On 1 November 1993, plaintiff was seen by Dr. John W. Cromer. At this visit, Dr. Cromer found that plaintiff's breath sounds were clear in both lung fields. A pulmonary function test showed normal function and normal flow rates. Dr. Cromer released plaintiff to resume full work duties. Plaintiff did return to work for defendant-employer, but was laid off soon thereafter, along with a number of other employees, as part of a standard reduction in force.
4. On 23 November 1993, plaintiff was seen again by Dr. Cromer for a follow-up examination. At that time, Dr. Cromer found plaintiff to be doing quite well, with no chest complaints, wheezing, or shortness of breath. Plaintiff's breath sounds were again clear in both lung fields. Further, Dr. Cromer concluded that any effects from the chemical inhalation exposure were resolved and he released plaintiff from his care. Defendants paid for all of plaintiff's medical treatment relating to the 29 October 1993 incident.
5. After his employment with defendant-employer, plaintiff worked for Crowder Construction Company ("Crowder") as a welder of prefabricated pipes. Plaintiff's workload included some ten-hour days and overtime.
6. Plaintiff then returned to work for defendant-employer on 17 January 1994. Plaintiff was laid off from defendant-employer in May 1994 as part of a standard reduction in force.
7. From May 1994 until August 1994, plaintiff worked full-time for B.E.K. Construction Co. ("B.E.K.") as a welder. As with plaintiff's employment with Crowder, he worked long hours, including eleven weeks of more than forty hours. Plaintiff was laid off from B.E.K. on 25 August 1994.
8. Following his employment with B.E.K., plaintiff went to work for Edwards, Inc. ("Edwards") in November 1994. As with Crowder and B.E.K., plaintiff worked long hours, including six weeks of more than forty hours. Plaintiff left the employment of Edwards in January 1995, and has not been gainfully employed since that time.
9. After resolution of the medical conditions arising out of the 29 October 1993 incident, plaintiff had no respiratory problems for about two and one-half months. In fact, plaintiff did not see another physician due to any claimed breathing problems until 18 July 1994, which was approximately nine months after the exposure to the hydrochloric acid solution. At that time, plaintiff sought medical attention from Dr. Stephen Grubb, a family practitioner. Dr. Grubb diagnosed plaintiff with asthmatic bronchitis with borderline pneumonia. Plaintiff had a history of bronchitis that predated the 29 October 1993 incident. Plaintiff was prescribed antibiotics and sent home.
10. After several return visits to Dr. Grubb, plaintiff ultimately was admitted into Loris Community Hospital with asthmatic bronchitis with purulent infection. After nine days of treatment, plaintiff was discharged. At discharge, plaintiff's chest x-rays showed his lung fields to be clear and his heart and pulmonary functions were normal for his age. Over the next several months, plaintiff had several episodes of recurrent bronchitis. Ultimately, Dr. Grubb referred plaintiff to Dr. Kenneth Olivier, a pulmonologist at the University of North Carolina-Chapel Hill Hospitals, for a second opinion.
11. Dr. Olivier performed an extensive evaluation of plaintiff, including a pulmonary exercise test. At that time, Dr. Olivier diagnosed plaintiff with a history of recurring bronchitis of unclear etiology. Further, Dr. Olivier found no significant respiratory findings.
12. Following the examination by Dr. Olivier, plaintiff continued to complain of respiratory problems. Plaintiff was referred to a second pulmonologist, Dr. Mark Barnard. On March 25, 1996, plaintiff submitted to a cardiovascular exercise stress test. The results of the stress test were normal. After a second examination on 25 April 1996, Dr. Barnard noted plaintiff's unwillingness to cooperate with respiratory testing.
13. On 8 August 1996, the parties deposed Dr. Stephen Grubb. At the deposition, Dr. Grubb was unable to testify that plaintiff's respiratory problems were, to a reasonable degree of medical certainty, caused by the 29 October 1993 exposure to the hydrochloric acid solution. Further, Dr. Grubb could not even say that plaintiff's difficulties were more likely than not due to the exposure. In fact, Dr. Grubb testified that, in his opinion as a family practitioner, an infection, a cold, or exposure to any noxious fumes, including welding fumes, could cause the respiratory problems from which plaintiff suffers. In recognition of the various potential casual factors, Dr. Grubb was unable to identify the 29 October 1993 hydrochloric acid solution exposure as the stated cause of plaintiff's breathing problems in this case.
14. On 18 June 1999, plaintiff underwent an independent medical examination by Dr. Peter Kussin, a pulmonologist and associate professor at Duke University Medical Center. Dr. Kussin conducted a physical examination of plaintiff, including a pulmonary function test and allergy tests. The allergy tests showed clinically significant responses to all grass pollens and significant responses to dust and dust mite. Moreover, after his extensive review of all of the medical evidence in this case, Dr. Kussin concluded that there was no relationship between plaintiff's complaints and the occupational exposure, particularly given the lack of temporal relationship between the exposure and the onset of plaintiff's symptoms.
15. Considering the medical evidence from all of the physicians, plaintiff does not suffer from an occupational disease. Furthermore, there is no causal connection between plaintiff's present condition and the injury by accident resulting in the chemical exposure on 29 October 29, 1993.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on 29 October 1993 as a result of his exposure to hydrochloric acid. G.S. § 97-2(6).
2. Plaintiff has not met his burden of proving by the greater weight of the evidence that his subsequent respiratory problems were causally related to his exposure to hydrochloric acid, or that he sustained any disability as a result of chemical exposure. G.S. § 97-2(9).
3. Plaintiff is entitled to have defendants provide for all medical treatment arising from his chemical exposure. G.S. § 97-2(19); G.S. § 97-25. Defendants have already paid for this treatment. Id.
4. Moreover, plaintiff has not met his burden of proving that his respiratory problems are related to a compensable occupational disease. G.S. § 97-53(13).
5. Because no examining physician believes that plaintiff's current respiratory problems were caused by the one-time hydrochloric acid solution exposure, plaintiff did not carry his burden of proof that he is entitled to further workers' compensation benefits. G.S. § 97-29; G.S. § 97-30; G.S. § 97-31.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full commission enters the following:
 ORDER
1. Plaintiff's claim for additional workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSION